**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TWINSTRAND BIOSCIENCES, INC., &
UNIVERSITY OF WASHINGTON,

              Plaintiffs,

    v.

GUARDANT HEALTH, INC.,

              Defendant.

C.A. No. 21-1126-VAC-SRF

**JURY TRIAL DEMANDED**

---

**DEFENDANT GUARDANT HEALTH, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO SEVER AND STAY GUARDANT HEALTH'S COUNTERCLAIMS (I–IV)**

**Of Counsel**:

Mark Fowler (admitted p*ro hac vice*)
Susan Krumplitsch (admitted p*ro hac vice*)
Monica De Lazzari (admitted p*ro hac vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, California 94303-2214
Telephone: 650-833-2048
Facsimile: 650-687-1166
mark.fowler@us.dlapiper.com
susan.krumplitsch@us.dlapiper.com
monica.delazzari@us.dlapiper.com

Michael A. Sitzman (admitted p*ro hac vice*)
**DLA PIPER LLP (US)**
555 Mission Street
Suite 2400
San Francisco, CA 94105-2933
Telephone: 415-615-6175
Facsimile: 415-659-7411
michael.sitzman@us.dlapiper.com

Brian A. Biggs (DE Bar No. 5591)
Jeff Castellano (DE Bar No. 4837)
Erin E. Larson (DE Bar No. 6616)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
jeff.castellano@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Defendant Guardant Health,
Inc.*

Ellen Scordino (admitted p*ro hac vice*)
Kristin Beale (admitted p*ro hac vice*)
**DLA PIPER LLP (US)**
33 Arch Street
26th Floor
Boston, MA 02110-1447
ellen.scordino@us.dlapiper.com
kristin.beale@us.dlapiper.com

## TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.  STATEMENT OF FACTS AND NATURE AND STAGE OF THE
     PROCEEDINGS ..................................................................................................................2

     A.   The Parties Are Competitors.................................................................................2

     B.   This Case Has Progressed Significantly And A Trial Date Is Set. .........................3

     C.   The Illumina Proceeding Is In Its Infancy. .............................................................4

     D.   Both Parties Have Filed IPR Petitions. ...................................................................4

III. ARGUMENT ........................................................................................................................4

     A.   All Factors Weigh Against Plaintiffs' Partial Stay. ...............................................5

          1.   Guardant would be severely prejudiced by a stay. ......................................5

          2.   A stay would not necessarily simplify any issue in this case. ..................10

          3.   The stage of this case disfavors a stay. .....................................................13

     B.   If Any Stay Is Granted, The Entire Action Should Be Stayed..............................15

     C.   Plaintiffs' Motion To Sever Also Should Be Denied. ...........................................15

          1.   Common issues of fact and law favor denying severance. ........................16

          2.   The interests of avoiding prejudice, ensuring judicial economy, and
               fundamental fairness would be hindered by severance..............................17

IV.  CONCLUSION...................................................................................................................17

WEST\299051920.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Align Tech., Inc. v. 3Shape A/S, 3Shape Inc.*,
No. 17-CV-1646-LPS-CJB, 2018 WL 4292675 (D. Del. Sep. 7, 2018) ..................................6

*AntennaSys Inc. v. AQYR Techs., Inc.*,
976 F.3d 1374 (Fed. Cir. 2020)....................................................................................11, 12

*Bio-Rad Lab's Inc. v. 10X Genomics, Inc.*,
No. 18-CV-1679-RGA, 2020 WL 2849989 (D. Del. June 2, 2020)......................................14

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
No. 18-CV-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11, 2020) ......................................6

*CG Tech. Dev., LLC v. Fanduel, Inc.*,
No. 2-16-CV-00801-RCJ-VCF, 2016 WL 6089693 (D. Nev. Oct. 18, 2016)..........................9

*Checkfree Corp. v. Metavante Corp.*,
No. 3:12-CV-15-J-34JBT, 2014 WL 466023 (M.D. Fla. Jan. 17, 2014)...............................15

*Coinstar, Inc. v. Scan Coin N. Am., Inc.*,
No. 07-CV-5285-CRN, 2008 WL 11517627 (N.D. Ill. July 3, 2008) ...................................12

*Cooper Notification, Inc. v. Twitter, Inc.*,
No. 09-CV-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) .........................................5

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
734 F. Supp. 656 (D. Del. 1990)........................................................................................14

*Ethicon v. Intuitive Surgical, Inc.*,
No. 17-CV-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) .......................................14

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)..........................................................................................10

*F'Real Foods v. Hamilton Beach Brands*,
No. 16-CV-41-GMS, 2017 WL 10619854 (D. Del. Mar. 9, 2017) .........................................5

*FMC Corp. v. Summit Agro USA, LLC*,
No. 14-CV-51-LPS, 2014 WL 3703629 (D. Del. July 21, 2014) ............................................5

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
C.A. No. 12-CV-054-GMS, 2012 WL 5599338 (D. Del. Nov. 15, 2012) ...................7, 9, 10

WEST\299051920.1

*Innovative Patented Tech., LLC v. Samsung Elecs. Co.*,
   No. 07-CV-81148-CIV, 2008 WL 2726914 (S.D. Fla. July 10, 2008) ..................................12

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.*,
   No. 14-CV-1192-LPS-CJB, 2015 WL 1737476 (D. Del. Apr. 9, 2015) ..............................6, 7

*La Chemise Lacoste v. Alligator Company, Inc.*,
   60 F.R.D. 164 (D. Del. 1973) ....................................................................................14

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   925 F.3d 1225 (Fed. Cir. 2019)..............................................................................11, 12

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
   C.A. No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013)......................................5, 6

*Nidec Corp. v. LG Innotek Co.*,
   No. 6:07-CV-108, 2009 WL 3673433 (E.D. Tex. Apr. 3, 2009)...............................................9

*Optimal Golf Sols., Inc. v. Altex Corp.*,
   No. 3:09-CV-1403-K, 2009 WL 10733424 (N.D. Tex. Sept. 30, 2009) ................................12

*Rmail Ltd. v. Amazon.com, Inc.*,
   No. 2:10-CV-258, 2014 WL 11394910 (E.D. Tex. Jan. 30, 2014) ........................................12

*Schering Corp. v. Roussel–UCLAF SA*,
   104 F.3d 341 (Fed. Cir. 1997)...................................................................................10

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
   959 F.3d 1065 (Fed. Cir. 2020)...............................................................................11, 12

*SenoRx, Inc. v. Hologic, Inc.*,
   No. 12-CV-173-LPS-CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013) ................................1, 5

*SoftView LLC v. Apple Inc.*,
   No. 10-CV-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) .........................................14

*Sound View Innovations, LLC v. Cigna Corp.*,
   No. 19-CV-964-CFC-CJB, D.I. 131 (D. Del. Aug. 4, 2020)..................................................14

*St. Clair Intellectual Prop. Consultants, Inc. v. Motorola Mobility LLC*,
   No. 11-CV-1305-LPS, 2012 WL 4321743 (D. Del. Sept. 20, 2012).......................................12

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
   No. 04-CV-1199-SLR, 2005 WL 851126 (D. Del. Apr. 13, 2005).  ................................15, 16

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)...................................................................................8

*Weisman v. Mediq, Inc.*,
 No. 95-CV-1831, 1995 WL 273678 (E.D. Pa. May 3, 1995) ................................................12

*Yodlee v. Plaid Techs. Inc.*,
 No. 14-CV-1445-LPS-CJB, D.I. 57 (D. Del. July 31, 2015) ...................................................6

**Other Authorities**

Fed. R. Civ. P. 19 ...........................................................................................................................12

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' requested stay would block Guardant from enforcing patents that its direct competitor TwinStrand is infringing, while at the same time forcing Guardant to defend itself against patent claims that its competitor TwinStrand asserts against it.  Such a one-sided stay of litigation involving "hard-fought competitors"—where both parties allege irreparable harm and seek permanent injunctive relief and lost profits—would be highly prejudicial to Guardant and "decidedly weighs against a stay."  *SenoRx, Inc. v. Hologic, Inc.*, No. 12-CV-173-LPS-CJB, 2013 WL 144255, at *9 (D. Del. Jan. 11, 2013).  Plaintiffs' request to stay Guardant's infringement claims pending the outcome of the *Illumina* action should therefore be denied.

Plaintiffs' motion also should be denied because staying Guardant's infringement claims will not necessarily simplify the issues to be tried in this action.  Illumina's complaint is the subject of a pending motion to dismiss and may not proceed beyond the pleading stage.  Moreover, even if the Illumina case were to proceed past the pleading stage, it is unknown whether the ownership issue ultimately will be decided in that case.  A stay should not be imposed here when the Illumina case may not advance beyond the pleading stage and when it is speculative whether ownership ever will be adjudicated in that case.

The stage of the present action relative to that of the *Illumina* action also weighs against granting a stay.  In the present case, the parties already have: exchanged infringement and invalidity contentions; engaged in extensive written, document and third-party discovery; exchanged claim terms to be construed and proposed constructions and are meeting and conferring about the same; and retained and disclosed multiple experts.  The *Illumina* action, by contrast, is in its infancy.

Because a stay is not justified, there is no reason to grant TwinStrand's request to sever Guardant's infringement counterclaims from the rest of the case.

If the Court considers granting a stay in this case, any such stay should be applied to both parties' claims and defenses to maintain the status quo between these two competitors.  Any one-sided stay in favor of TwinStrand would provide it an unwarranted tactical advantage and would be fundamentally unfair to Guardant.

## II.    STATEMENT OF FACTS AND NATURE AND STAGE OF THE PROCEEDINGS

### A.    The Parties Are Competitors.

Guardant and TwinStrand are competitors.  Both provide kits to their customers to collect samples for subsequent analysis using their respective sequencing and variant-detection methods. *See, e.g.*, D.I. 1 (Complaint) at ¶ 26; D.I. 30 (Counterclaim) at ¶ 118.  In this regard, Guardant is "one of the leading precision oncology companies dedicated to helping conquer cancer with data obtained through its proprietary blood tests," and "was one of the first companies to commercialize a comprehensive liquid biopsy assay to identify genomic biomarkers, which are biological molecules found in blood or tissues that may be indicative of a disease such as cancer . . . ."  D.I. 30 (Counterclaim) at ¶¶ 116-117.  "Guardant's liquid biopsy technology enables patients . . . to obtain detailed genomic information about their cancer. This allows physicians to select the best treatment, while also helping to detect cancer early."  *Id.* at ¶ 117.

TwinStrand likewise alleges that its technology "provides the sensitivity and specificity necessary for accurate cancer detection and monitoring with non-invasive blood draws—liquid biopsies—resulting in dramatic improvements in oncology patient care" including early cancer detection and treatment selection.  D.I. 1 (Complaint) at ¶ 22.  This technology allegedly is "built on the invention of the Asserted Patents" that Guardant's products allegedly infringe.  *Id.*

Both Guardant and TwinStrand allege irreparable harm and seek permanent injunctive relief and lost profits, further demonstrating that they are competitors.  *See, e.g.*, D.I. 1

2

(Complaint) at ¶¶ 55-56, 74-75, 93-94, 108-109, p. 35; D.I. 30 (Counterclaim) at ¶¶ 166-167, 185-186, 205-206, 224-225, p. 78.

The parties' status as competitors is further underscored by TwinStrand's pattern of improperly copying Guardant's patent claims and prosecuting them as TwinStrand's own patent claims.  D.I. 30 (Counterclaim) at ¶¶ 124-125, 140-148, 265, 290.

**B.    This Case Has Progressed Significantly And A Trial Date Is Set.**

Pursuant to the Court's December 10, 2012, Scheduling Order (D.I. 20), the parties have exchanged preliminary infringement contentions, preliminary invalidity contentions, and proposed claim constructions as to both Guardant's and TwinStrand's respective patent infringement claims.  *See* D.I. 52, 64, 65, 71, 78.  Fact discovery is well underway; both parties have served their respective core technical document productions, and the parties have propounded and responded to seven sets of requests for production (totaling 319 requests) and seven sets of interrogatories (totaling 42 interrogatories).  *See* D.I. 19, 22, 25, 34, 36, 41, 42, 44, 53, 60, 61, 63, 66, 67, 70, 68, 74, 77.  Declaration of Jeff Castellano ("Castellano Decl.") at ¶ 5.  Both parties also have served third-party subpoenas and received responses and objections, including separate subpoenas to Illumina by both Plaintiffs and Guardant, and a subpoena to FMI by Guardant.  *See* D.I. 37, 46, 47, 72; Castellano Decl. at ¶ 6.  The substantial completion of document production deadline and the fact discovery cutoff are September 9, 2022, and February 3, 2023, respectively.  D.I. 20 at ¶ 8.  Trial is set for November 6, 2023.  *Id.* at ¶ 24.

Claim construction is well underway.  The parties have exchanged terms to be construed and proposed constructions and are in the process of meeting and conferring regarding both.  Castellano Decl. at ¶ 7.  Claim construction briefing begins in July 2022 and ends in September 2022, and the Markman hearing is scheduled for November 28, 2022.  D.I. 20 at ¶¶ 13-14.

WEST\299051920.1

Both parties already have retained and disclosed multiple experts.  Castellano Decl. at ¶ 8.  Additionally, Plaintiffs have filed a motion to dismiss certain of Guardant's counterclaims and affirmative defenses.  D.I. 38.  That motion is fully briefed.

### C.    The Illumina Proceeding Is in Its Infancy.

Plaintiffs' requested stay is based on disputed allegations in a complaint filed by Illumina.  *Illumina, Inc. v. Guardant Health, Inc. et al.*, C.A. No. 22- 334-VAC-CJB (D. Del.), D. I. 1 (Complaint).  That *Illumina* matter is in its infancy.  The *Illumina* complaint was filed on March 17, 2022, and the Court has yet to enter a schedule.  *Id.*  In response to the *Illumina* complaint, the defendants filed: a motion to dismiss for failure to state a claim, for lack of jurisdiction over the subject matter, and for lack of jurisdiction over the person; and a motion to transfer the case to the Northern District of California.  *Id.* at D.I. 26, 27, 29, 30.  These motions will not be fully briefed until July 20, 2022.  *Id.* at D.I. 35.  No trial date has been set, and whether any trial ever occurs is uncertain in view of defendants' pending motions.

### D.    Both Parties Have Filed IPR Petitions.

Both parties have filed petitions for *Inter Partes Review* before the Patent and Trademark Office challenging the other party's asserted patents.  Castellano Decl. at ¶ 9.  Guardant filed five petitions challenging three of Plaintiffs' four asserted patents.  *Id.*  Institution decisions are expected between August and December 2022.  *Id.*  TwinStrand also filed five petitions challenging three of the four patents asserted by Guardant.  *Id.* at ¶ 10.  Institution decisions on the TwinStrand petitions are expected between October 2022 and January 2023.  *Id.*

## III.    ARGUMENT

Plaintiffs seek to gain an unfair tactical advantage over their competitor Guardant by staying Guardant's patent counterclaims while their own claims against Guardant proceed.  The

WEST\299051920.1

potential prejudice to Guardant in this competitor litigation is enormous.  Each of the other relevant factors also favors denying Plaintiffs' motion to stay.

**A.    All Factors Weigh Against Plaintiffs' Partial Stay.**

The parties agree the three relevant stay factors are: (1) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage; (2) whether a stay will simplify the issues for trial; and (3) the status of the litigation, particularly whether discovery is complete and a trial date has been set.  D.I. 76 (Motion) at 7. All three factors weigh against a stay.

**1.    Guardant would be severely prejudiced by a stay.**

A stay would severely prejudice Guardant and provide an unwarranted tactical advantage to TwinStrand, Guardant's competitor.  D.I. 38 at ¶¶ 124-129.  This Court has been reluctant to grant stays where the parties are competitors due to the severe prejudice that would result.  *See SenoRx, Inc.*, 2013 WL 144255 at *9 (finding prejudice disfavored stay where the parties were "hard-fought competitors"); *FMC Corp. v. Summit Agro USA, LLC*, No. 14-CV-51-LPS, 2014 2014 WL 3703629, at *19-20 (D. Del. July 21, 2014) (competitor status weighs against stay); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-CV-865-LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010) (same); *F'Real Foods v. Hamilton Beach Brands*, No. 16-CV-41-GMS, 2017 2017 WL 10619854, at *1 n.3 (D. Del. Mar. 9, 2017) (same).  This factor thus weighs heavily against a stay.

Courts may be more inclined to grant a stay when the parties are not competitors.  But even those cases—including cases cited by Plaintiffs—recognize the prejudice inherent in a delay where the parties are direct competitors, as they are here.  For example, in *Neste Oil Oyj v. Dynamic Fuels, LLC*, cited by Plaintiffs, the court stated that "[c]ourts are generally reluctant to stay proceedings where the parties are direct competitors."  C.A. No. 12-CV-662-GMS, 2013

5

WL 424754, at *2 (D. Del. Jan. 31, 2013) (citations and quotations omitted).  This is because

"there is a reasonable chance that delay in adjudicating the alleged infringement will have

outsized consequences to the party asserting infringement has occurred, including the potential

for loss of market share and an erosion of goodwill."  *Id.* (citations and quotations omitted); *see*

*also Brit. Telecommunications PLC v. IAC/InterActiveCorp*, No. 18-CV-366-WCB, 2020 WL

5517283, at *7-8 (D. Del. Sept. 11, 2020) (cited by Plaintiffs) ("Courts have found that a stay of

litigation would prejudice a patent owner if the parties are direct competitors.").

 While *any* stay of Guardant's infringement claims would prejudice Guardant because it

would permit its competitor TwinStrand to continue to sell infringing products, the indeterminate

nature of the requested stay here would compound that prejudice.  Although the *Illumina* action

may be resolved on the pleadings pursuant to Guardant's pending motions (which may not be

resolved for months), if the *Illumina* action subsequently proceeds beyond the pleading stage, the

resulting "lengthy stay, would effectively be 'a complete bar on [Guardant's] efforts to obtain

any injunctive or monetary relief against'" TwinStrand and could "also result in loss of market

share."  *Align Tech., Inc. v. 3Shape A/S, 3Shape Inc.*, No. 17-CV-1646-LPS-CJB, 2018 WL

4292675, at *3 (D. Del. Sep. 7, 2018) (quoting D.I. 17 (Resp. Br.) at 8-10); *see also Yodlee v.*

*Plaid Techs. Inc.*, No. 14-CV-1445-LPS-CJB, D.I. 57 at 12 (D. Del. July 31, 2015) ("The

combination of the real prospect of competitive harm to Plaintiff if a stay is granted, coupled

with the delay that such a stay would entail, together indicate that the 'undue prejudice' factor

should weigh against a stay.").

 The *Kaavo* case relied on by Plaintiffs does not compel a different result.  In fact, that

case also recognizes that "[c]ourts have recognized that when the parties are direct competitors,

there is a reasonable chance that delay in adjudicating the alleged infringement will have

outsized consequences to the party asserting infringement has occurred, including the potential

for loss of market share and an erosion of goodwill." *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*,

No. 14-CV-1192-LPS-CJB, 2015 WL 1737476, at *3 (D. Del. Apr. 9, 2015). In that case, unlike

here, the parties' status as competitors was disputed. *Id.* at *5.

   A stay also would provide Plaintiffs with a significant and unwarranted tactical advantage

over Guardant. *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-054-GMS,

2012 WL 5599338, at *3 (D. Del. Nov. 15, 2012) ("Undue prejudice and clear tactical

disadvantage are more likely to exist where the grant of a stay imposes a greater burden on the

non-movant than its denial would inflict on the movant."). Specifically, the requested one-sided

stay would permit TwinStrand to proceed on a path to trial on its infringement claims while

stopping Guardant's claims dead in their tracks. In this regard, during the meet and confer

process preceding the present motion, Plaintiffs' counsel acknowledged that Plaintiffs seek to

sever Guardant's claims because by the time any stay concludes, Guardant's claims would be so

far behind Plaintiffs' claims that it would not make sense to rejoin them. Plaintiffs thus seek to

reach resolution on their own patents, while thwarting the ability of their competitor, Guardant,

to concurrently enforce its own patents, thereby conferring clear tactical advantage to Plaintiffs.

   Plaintiffs suggest Guardant would not be prejudiced by a stay because Foundation

Medicine, Inc. ("FMI") previously asserted an inequitable conduct defense to one of the four

patents that Guardant is asserting in the present action, U.S. Patent No. 10,801,063 ("'063

patent"). D.I. 76 (Motion) at 13-14. This curious argument fails for at least four reasons. First,

FMI's inequitable conduct defense to the '063 patent lacked merit and was not resolved on the

merits (the case settled). Second, FMI's inequitable conduct defense did not challenge

Guardant's ownership of the patent or its standing to assert it. Third, the apparent conclusion to

7

be drawn from Plaintiffs' argument—namely that a patent owner whose patent is unsuccessfully challenged in prior litigation never should reassert that patent in later litigation against another party—finds no support in the law (and Plaintiffs cite no supporting legal precedent).  Fourth, Illumina never claimed during the FMI litigation that Guardant had engaged in alleged wrongdoing or that FMI owned any Guardant patent.  The FMI litigation therefore did not, as Plaintiffs suggest, place a "cloud" over the ownership of the '063 patent.

Plaintiffs also suggest that Guardant would not be prejudiced by a stay because Guardant "delayed" in filing suit against TwinStrand.  D.I. 76 (Motion) at 14.  This argument also lacks merit.  Two of the four Guardant patents-in-suit—U.S. Patent Nos. 11,118,221 and 11,149,306— issued in September and October 2021 respectively, just a few months before Guardant filed its January 2022 infringement counterclaims.  Castellano Decl. at ¶ 11, D.I. 30, Exs. C, D.  The other two asserted patents—the '063 patent and U.S. Patent No. 10,889,858—issued in October 2020 and January 2021 respectively, only about a year before the counterclaims were filed.  *Id.* at ¶ 12, D.I. 30, Exs. A, B.  Plaintiffs cite no authority supporting its argument that timely asserting such recently issued patents somehow can diminish the substantial prejudice that Guardant would suffer should its infringement claims be stayed while TwinStrand's competing claims are allowed to proceed.

Plaintiffs argue that the fact that Guardant has not sought preliminary injunctive relief somehow establishes that Guardant would not be prejudiced by a stay.  D.I. 76 (Motion) at 14-15.  However, as the *VirtualAgility* case that TwinStrand relies upon itself states, whether a party seeks a preliminary injunction "is not dispositive" on whether a stay should be granted. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014).  And here, unlike *VirtualAgility*, two competitors are asserting patent infringement claims against each other

8

and a one-sided stay against Guardant would thus prejudice Guardant while providing TwinStrand an unwarranted tactical advantage.  *See also Nidec Corp. v. LG Innotek Co.*, No. 6:07-CV-108, 2009 WL 3673433, at *4 (E.D. Tex. Apr. 3, 2009) (finding that "because the parties are direct competitors in the marketplace; Plaintiff may have the chance to secure a permanent injunction; and because of the lengthy nature of the reexamination process and corresponding indefinite nature of a stay, the Court finds that Plaintiff would suffer undue prejudice resulting from a stay in this case and this factor weighs against granting a stay.").

While ignoring the substantial prejudice that a stay would cause Guardant, Plaintiffs argue they will be harmed if a stay is not granted.  Yet, they identify no specific hardship or inequity; certainly, none that justifies the prejudice that would result to Guardant if a stay is granted.  *See ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-CV-054-GMS, 2012 WL 5599338, at *3 (D. Del. Nov. 15, 2012) ("[W]here there is a 'fair possibility' that a stay would prove detrimental to the non-movant, and the movant is unable to demonstrate a clear case of hardship or inequity, granting that stay is likely to result in undue prejudice to the non-movant."); *see also CG Tech. Dev., LLC v. Fanduel, Inc.*, No. 2-16-CV-00801-RCJ-VCF, 2016 WL 6089693, at *3 (D. Nev. Oct. 18, 2016) ("Although Defendant may be harmed without a stay because it will have to litigate a potentially moot issue, a similar measure of harm will befall CG Tech if the Court grants a stay and CG Tech must then conduct a second trial because the issue of infringement of the '818 Patent has not been mooted by the New York litigation.").

TwinStrand asserts that it could be subject to "multiple suits" if Guardant's counterclaims are not stayed (D.I. 76 at 12), but cites no evidence to support this speculation.  For example, TwinStrand does not assert (much less cite any evidence) that Illumina has threated to sue TwinStrand for infringing the counterclaim patents.  Moreover, TwinStrand has itself chosen to

9

multiply the proceedings with respect to the counterclaim patents by filing IPR petitions with the PTAB seeking to invalidate their claims. Thus, TwinStrand has failed "to demonstrate a clear case of hardship or inequity" that would outweigh the prejudice to Guardant. *ImageVision.Net*, 2012 WL 5599338, at *3.

Plaintiffs also assert there would be chilling effect on settlement absent a stay because Plaintiffs do not know with whom it should negotiate. D.I. 76 (Motion) at 12. However, even putting aside that TwinStrand offers no evidence showing it has any interest in resolving the infringement claims brought against it through settlement, the premise of Plaintiffs' argument is incorrect. One of the named inventors on each of the four Guardant counterclaim patents is Guardant employee Dr. Stefanie Mortimer. Castellano Decl. at ¶ 13, D.I. 30 Exs. A-D. Dr. Mortimer never worked for Illumina and her contributions to the claimed inventions are therefore not subject to any tenable claim by Illumina. Thus, even if Illumina's claims had any merit, Guardant would at worst be a co-owner of the patents. This important fact dispatches Plaintiffs' settlement-confusion argument because it is well-established that "[e]ach co-owner's ownership rights carry with them the right to license others, a right that also does not require the consent of any other co-owner." *Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997)). "This freedom to exploit the patent without a duty to account to other co-owners also allows co-owners to freely license others to exploit the patent without the consent of other co-owners." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998).

### 2. A stay would not necessarily simplify any issue in this case.

A stay pending the outcome of the *Illumina* action would not necessarily simplify *any* issue in this case, for at least the following six reasons.

First, Illumina's complaint is the subject of pending motions to dismiss for failure to state a claim, for lack of jurisdiction over the subject matter, and for lack of jurisdiction over the

person (as well as a motion to transfer the case to the Northern District of California). *Illumina, Inc. v. Guardant Health, Inc. et al.*, No. 1:22-CV-00334-VAC-CJB (D. Del.) at D.I. 26, 27, 29, 30. Thus, it is far from clear whether Illumina's claims will survive the pleading stage.

Second, even if Illumina's claims were to survive the pleading stage, it is mere speculation that the claims ultimately would go to judgment. A stay should not be imposed here when the Illumina case may not advance beyond the pleading stage and when it is speculative whether ownership ultimately will be adjudicated in that case.

Third, Plaintiffs are incorrect in asserting that if Illumina were found to be a co-owner of the four Guardant counterclaim patents, that would result in "an incurable defect in initial standing" due to a "lack[ing] Article III initial standing." D.I. 76 (Motion) at 9-10. In *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225 (Fed. Cir. 2019), the Federal Circuit concluded that Article III standing in patent infringement cases requires only that the claimant possess exclusionary rights and that the accused party infringed those rights, and that the issue of "whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Id*. at 1234-36; *see also Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020) (same); *AntennaSys Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020) ("AntennaSys's failure to join Windmill as a co-plaintiff impacts AntennaSys's ability to satisfy the statutory prerequisites for bringing an infringement suit; it does not impact AntennaSys's Article III standing.").

Fourth, Plaintiffs also are incorrect in asserting that Guardant would not be permitted to move to join Illumina as party to the present case if it were determined that Illumina had some rights to the counterclaim patents. *Lone Star*, 925 F.3d at 1236-39 ("Lone Star argues that, because it has standing, even if it lacks all substantial rights in the patents, it should be given an

opportunity to join AMD as a necessary party before this case is dismissed. We agree. This result is compelled by Federal Rule of Civil Procedure 19 and our case law.").  Notably, all of the cases that Plaintiffs cite in support of their "incurable defect" argument predate the Federal Circuit's decisions in *Lone Star*, *Schwendimann*, and *AntennaSys*.  D.I. 76 (Motion) at 8-10.

Fifth, none of the cases Plaintiffs rely upon supports granting a stay in the present case. In *Innovative Patented Tech., LLC v. Samsung Elecs. Co.*, ownership was at issue in two pending cases and the nonmovant (Plaintiff) agreed that the earlier filed suit in Illinois would resolve the ownership issue.  No. 07-CV-81148-CIV, 2008 WL 2726914, at *1 (S.D. Fla. July 10, 2008). With that in mind, the Southern District of Florida court was "not convinced that it [would] be able to resolve the ownership issue more quickly than the Illinois court" and granted the requested stay.  *Id*. at *2.  In *Optimal Golf Sols., Inc. v. Altex Corp.*, No. 3:09-CV-1403-EK, 2009 WL 10733424, at *1 (N.D. Tex. Sept. 30, 2009), the ownership issue was to be decided "in the coming weeks" rather than years, which is the potential length of the requested stay here.  In *Coinstar, Inc. v. Scan Coin N. Am., Inc*., No. 07-CV-5285-CRN, 2008 WL 11517627, at *4 (N.D. Ill. July 3, 2008), the court was obligated to "resolve any doubts in favor of arbitration," which included the question of ownership.  There is no arbitration clause at issue here.  In *Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258-JRG, 2014 WL 11394910, at *5-6 (E.D. Tex. Jan. 30, 2014), a judgment of no ownership had been entered in one of three co-pending litigations and was an issue on appeal, which is not the situation here.  *St. Clair Intellectual Prop. Consultants, Inc. v. Motorola Mobility LLC*, No. 11-CV-1305-LPS, 2012 WL 4321743, at *1 (D. Del. Sept. 20, 2012) is readily distinguishable from the present case because, in *St. Clair*, "multiple summary judgment motions, including several seeking to invalidate patents asserted" were "pending before [the] Court in related patent infringement cases" and two related cases

12

already had been stayed by the court.  *Id.*  Nothing of the sort is present here.  Finally, in *Weisman v. Mediq, Inc.*, No. 95-CV-1831, 1995 WL 273678, at *2 (E.D. Pa. May 3, 1995), the Eastern District of Pennsylvania concluded in a RICO case that a stay of <u>discovery</u> was warranted pending resolution of a motion to dismiss in that same case.  That case did not involve standing issues, did not involve a second case with a different litigant, and the requested stay was not for the duration of the case.

Sixth, Plaintiffs argue that proving their standing defense will require extensive third-party discovery from Illumina.  D.I. 76 (Motion) at 2-3, 10-11.  However, Plaintiffs cite no cases for the proposition that the need for third party discovery to prove a claim or defense favors entry of a stay.  Plaintiffs' argument also ignores the fact that both Plaintiffs and Guardant already have engaged in third-party discovery with Illumina in the present case.  Castellano Decl. at ¶ 6.

### 3.   The stage of this case disfavors a stay.

The present case is well underway and the parties already have expended significant resources on the case.  The parties have exchanged preliminary infringement contentions, preliminary invalidity contentions, and proposed claim constructions as to both Guardant's and TwinStrand's respective patent infringement claims.  *See* D.I. 52, 64, 65, 71, 78.  The parties are in the midst of fact discovery; both parties have served their respective core technical document productions, and the parties have propounded and responded to a total of 319 document requests and 42 interrogatories.  *See* D.I. 19, 22, 25, 34, 36, 41, 42, 44, 53, 60, 61, 63, 66, 67, 70, 68, 74, 77.  Both parties also have served third-party subpoenas and received responses and objections. *See* D.I. 37, 46, 47, 72; Castellano Decl. at ¶ 6.  The substantial completion of document production deadline and the fact discovery cutoff are September 9, 2022, and February 3, 2023, respectively, and trial is set for November 6, 2023.  D.I. 20 (Scheduling Order) at ¶¶ 8, 24.

13

The parties also have exchanged terms to be construed and proposed constructions and are in the process of meeting and conferring regarding both.  Castellano Decl. at ¶ 7.  Claim construction briefing begins in July 2022 and ends in September 2022, and the Markman hearing is scheduled for November 28, 2022.  D.I. 20 at ¶¶ 13-14.  Both parties also already have retained and disclosed multiple experts.  Castellano Decl. at ¶ 8.

It is thus clear that the parties have "expended real resources on the case."  *Sound View Innovations, LLC v. Cigna Corp.*, No. 19-CV-964-CFC-CJB, D.I. 131 (D. Del. Aug. 4, 2020); *see also SoftView LLC v. Apple Inc.*, No. 10-CV-389-LPS, 2012 WL 3061027 at *4 (D. Del. July 26, 2012) (expenditure of substantial resources weighs against a stay).

The current status of the present case—in which discovery is well underway and the claim construction process has started—relative to the current status of the *Illumina* case—which is in its infancy—also supports denying a stay.  For example, in *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990), cited by Plaintiffs, the Court denied a stay, finding that "[t]he disposition of the earlier case should not be delayed by the later filed litigation." (quoting *La Chemise Lacoste v. Alligator Company, Inc.*, 60 F.R.D. 164, 176 (D. Del. 1973)).

Plaintiffs rely on cases stayed after IPRs were instituted.  D.I. 76 (Motion) at 12-13.  In *Bio-Rad Lab's Inc. v. 10X Genomics, Inc.*, No. 18-1679-RGA, 2020 WL 2849989, at *1-2 (D. Del. June 2, 2020), a stay was granted pending an instituted petition for IPR.  Similarly, in *Ethicon v. Intuitive Surgical, Inc.*, No. 17-CV-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019), the Court issued a stay where "IPR proceedings have been instituted against six of the seven patents-in-suit, covering 14 of the 15 asserted claims."  In the present case, the PTAB has not yet decided whether to institute any of the parties' requested IPRs.

14

**B.      If Any Stay Is Granted, The Entire Action Should Be Stayed.**

If Court finds a stay is appropriate—which it should not—it should stay the entire action to maintain the status quo between direct competitors rather grant a one-sided stay that provides a tactical advantage to Plaintiffs.  Such a result between competitors would be further justified by the fact that both parties have filed IPR petitions seeking to invalidate the other party's asserted patent claims.  *See Checkfree Corp. v. Metavante Corp.*, No. 3:12-CV-15-J-34-JBT, 2014 WL 466023, at *6 (M.D. Fla. Jan. 17, 2014) (staying both parties' infringement claims pending CBM on one side's patents and noting that "any competitive disadvantage in delaying a determination of infringement visited on [plaintiff] is at least equally visited on [defendant].").  Indeed, Plaintiffs themselves note that a stay pending resolution of IPRs would "likely narrow[] the number of claims (if not patents) and the scope of the prior art that the Court will have to deal with in this case."  D.I. 76 (Motion) at 3; *see also id.* at 11 ("Accordingly, the PTAB's review of Guardant's Counterclaim Patents will simplify the issues in the case by reducing the number of claims, if not patents, in time to avoid unnecessary expenditure of resources concerning Guardant's patents during 'the most burdensome stages of the case'.") (quoting *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019).  Accordingly, should the Court decide to enter any stay, it should stay the entire action.

**C.      Plaintiffs' Motion To Sever Also Should Be Denied.**

In order to effectuate Plaintiffs' requested stay, Plaintiffs' request that the Court sever Guardant's infringement counterclaims from the rest of the case.  However, because no stay should issue, there is no reason to sever those claims.  Although that is reason enough to not sever Guardant's infringement counterclaims, Plaintiffs' motion to sever also should be denied for the following additional reasons.

15

1.      **Common issues of fact and law favor denying severance.**

Plaintiffs correctly state that Courts in this district evaluate whether (1) the claims arise

out of the same transaction, occurrence, or series of transactions or occurrence, and (2) there is a

question of law or fact common to the disparate claims.  D.I. 76 (Motion) at 16.  In this regard,

"[i]t is the experience of this court that patents over the same technology often give rise to the

same questions of law and fact (e.g., same prior art references, same level of ordinary skill in the

art)."  *SRI Int'l, Inc. v. Internet Sec. Sys., Inc*., No. 04-CV-1199-SLR, 2005 WL 851126, at *4

(D. Del. Apr. 13, 2005).  This is precisely the case here.

As discussed above, Guardant and TwinStrand are competitors that both operate in the

field of precision oncology liquid biopsies, where each party provides kits to its customers to

collect samples for subsequent analysis using its respective sequencing and variant-detection

methods to diagnose disease and identify genetic biomarkers.  *See, e.g.*, D.I. 1 (Complaint) at

¶¶ 22, 26; D.I. 30 (Counterclaim) at ¶¶ 116-118.  The extent to which the parties compete is

highlighted by TwinStrand's pattern of improperly copying Guardant's patent claims and

prosecuting them as TwinStrand's own patent claims.  D.I. 30 (Counterclaim) at ¶¶ 124-125,

140-148, 265, 290.   It is thus not surprising that the Court and jury will be presented with a

considerable amount of technical information that will apply to both parties' claims.  For

example, Guardant products are alleged prior art to Plaintiffs' patents.  Castellano Decl. at ¶ 14,

Ex. 1 (Guardant Invalidity Contentions) at 12.  And the same level of ordinary skill in the art will

necessarily be considered as the parties' patents are generally directed to the same field of

endeavor, and as Plaintiffs and Guardant have alleged comparable levels of ordinary skill in the

art.  *See id.* at ¶ 15; *id.* at Ex. 1 (Guardant Invalidity Contentions) at 6; *id.* at Ex. 2 (TwinStrand

Invalidity Contentions) at 6-7.  Moreover, because the parties are competitors, the Court and jury

also will be presented with substantial information about both parties' business operations in evaluating both parties' lost profit damages claims.

Plaintiffs' reliance on *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1373 (Fed. Cir. 2019) is unavailing.  D.I. 76 (Motion) at 17.  The issue in *Anza* was whether claims in an amended complaint related back to the date of the original complaint, not severance.  Rather, as discussed above, it has been noted in this district that patents covering the same technology often give rise to the same questions of law and fact.  *SRI*, 2005 WL 851126, at *4.

          **2.**      **The interests of avoiding prejudice, ensuring judicial economy, and fundamental fairness would be hindered by severance.**

Plaintiffs' arguments on this point are premised <u>exclusively</u> on staying Guardant's infringement counterclaims.  D.I. 76 (Motion) at 17.  However, as discussed above, it would be extremely prejudicial and fundamentally unfair to Guardant to stay its claims while permitting the infringement claims of its competitor TwinStrand to continue.  *See* § III.A.1., *supra*.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion to sever and stay should be denied. However, to the extent the Court considers any stay, both parties' claims should be stayed to maintain the status quo between these two competitors and to allow the parties' respective IPRs to be decided by the PTAB.

Dated: July 1, 2022

**Of Counsel**:

Mark Fowler (admitted p*ro hac vice)*
Susan Krumplitsch (admitted p*ro hac vice)*
Monica De Lazzari (admitted p*ro hac vice)*
2000 University Avenue
East Palo Alto, California 94303-2214
Telephone: 650-833-2048
Facsimile: 650-687-1166
mark.fowler@us.dlapiper.com
susan.krumplitsch@us.dlapiper.com
monica.delazzari@us.dlapiper.com

Michael A. Sitzman (admitted p*ro hac vice)*
555 Mission Street
Suite 2400
San Francisco, CA 94105-2933
Telephone: 415-615-6175
Facsimile: 415-659-7411
michael.sitzman@us.dlapiper.com

Ellen Scordino (admitted p*ro hac vice)*
Kristin Beale (admitted p*ro hac vice)*
**DLA PIPER LLP (US)**
33 Arch Street
26th Floor
Boston, MA 02110-1447
Telephone: 617-406-6085
ellen.scordino@us.dlapiper.com
kristin.beale@us.dlapiper.com

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Jeff Castellano*
Brian A. Biggs (DE Bar No. 5591)
Jeff Castellano (DE Bar No. 4837)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
jeff.castellano@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Defendant Guardant Health, Inc.*