**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TWINSTRAND BIOSCIENCES, INC. &
UNIVERSITY OF WASHINGTON,

                    Plaintiffs,                      C.A. No. 21-1126-GBW-SRF

            v.                                       **PUBLIC VERSION OF D.I. 548**

GUARDANT HEALTH, INC.,

                    Defendant.

---

**DEFENDANT GUARDANT HEALTH INC.'S ANSWERING BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTIONS FOR ENHANCED DAMAGES, ATTORNEYS' FEES, AN
ONGOING ROYALTY AND OTHER RELIEF**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     NO ENHANCED DAMAGES SHOULD BE AWARDED .................................................2

        A.      "Egregious Infringement" Is a Prerequisite for Enhanced Damages. .....................2

        B.      TwinStrand's "Copying" Argument Does Not Support Enhanced
                Damages. ..........................................................................................................3

                1.      TwinStrand's "copying" evidence does not show egregiousness. ...............3

                2.      The parties' license negotiations are not evidence of copying. ...................5

                3.      District of Delaware case law supports no enhancement here. ....................7

        C.      TwinStrand Has Not Shown Unreasonable Litigation Conduct or that
                Guardant's Positions Lacked Merit. ..................................................................9

                1.      There was no contradiction between Guardant's non-infringement
                        defense at trial and its earlier litigation positions and licensing
                        efforts. ..........................................................................................9

                2.      Guardant's invalidity defenses were reasonable. .....................................11

                3.      Guardant did not try to circumvent the Court's orders. ............................13

                4.      Guardant did not cite bad case law to the Court. .....................................13

                5.      There was no impropriety in Guardant's closing arguments about
                        Dr. Pachter's credibility. ...................................................................14

        D.      The Case Was At Least Close. ..........................................................................15

        E.      In Sum, TwinStrand Has Not Shown that Guardant Engaged in Any
                Egregious Conduct that Warrants Enhanced Damages. ........................................16

III.    ATTORNEYS' FEES SHOULD BE DENIED BECAUSE THE CASE IS NOT
        EXCEPTIONAL ..............................................................................................16

IV.     AN ONGOING ROYALTY SHOULD NOT EXCEED ████ ........................................17

V.      SUPPLEMENTAL DAMAGES AND PRE-/POST-JUDGMENT INTEREST..............20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010)...................................................................................14

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
No. 12-CV-00630-LHK, 2018 WL 905943 (N.D. Cal. 2018)...............................20

*Applera Corp. v. MJ Research Inc.*,
372 F. Supp. 2d 233 (D. Conn. 2005)........................................................................3

*Applied Materials, Inc. v. Multimetrixs, LLC*,
No. 06-CV-07372-MHP, 2008 WL 2892453 (N.D. Cal. July 22, 2008),
*aff'd*, 404 F. App'x 493 (Fed. Cir. 2010)...............................................................14

*ArcherDX, LLC v. Qiagen Scis., LLC*,
No. 18-CV-01019-MN, 2022 WL 4597877 (D. Del. Sep. 30, 2022) .......................7

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
198 F. Supp. 3d 1343 (S.D. Fla. 2016), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017)....................6, 7

*Auxilium Pharms., Inc. v. Watson Labs., Inc.*,
No. 12-CV-03084-JLL, 2013 U.S. Dist. LEXIS 142462 (D.N.J. Oct. 2, 2013).....................14

*Belcher Pharms., LLC v. Hospira, Inc.*,
No. 17-CV-00775-LPS, 2019 U.S. Dist. LEXIS 103012 (D. Del. June 5, 2019) ..................14

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ...................................................................................14

*Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA, Inc.*,
No. 6:15-CV-00163-JDL, D.I. 412 (D. Del. Jan. 23, 2017),
*aff'd*, 732 F. App'x 876 (2018).................................................................................12

*Click-to-Call Techs. LP v. Ingenio Inc.*,
45 F.4th 1363 (Fed. Cir. 2022) ................................................................................15

*EMC Corporation et. al. v. Zerto, Inc.*,
12-CV-00956-GMS, 2017 WL 3434212 (D. Del. Aug. 10, 2017).........................19

*Erfindergemeinschqft UroPep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB, 2017 WL 3034655 (E.D. Tex. July 18, 2017)..............19

*Evonik Degussa GMBH v. Materia Inc.*,
No. 09-CV-00636-NLH, 2011 U.S. Dist. LEXIS 156390 (D. Del. Dec. 13, 2011)...............14

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004).........................................................................................17

*Green Mtn. Glass LLC v. Saint-Gobain Containers, Inc.*,
  300 F. Supp. 3d 610 (D. Del. 2018), *aff'd*, 773 F. App'x 619 (Fed. Cir. 2019).......................9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016)................................................................................ *passim*

*Junker v. Med. Components, Inc.*,
  No. 13-CV-04606-MSG, 2016 U.S. Dist. LEXIS 176409 (E.D. Pa. Dec. 21, 2016)..............14

*Novozymes A/S v. Genencor Int'l, Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007)...............................................................................3, 16

*Nox Med. Ehf v. Natus Neurology Inc.*,
  No. 1:15-CV-00709-RGA, 2018 WL 6427686 (D. Del. Dec. 7, 2018)................................2, 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)...................................................................................................1, 17

*Philip Morris Prods. SA v. RJ Reynolds Vapor Co.*,
  No. 1-20-CV-00393, 2023 WL 2843796 (E.D. Va. Mar. 30, 2023)......................................19

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  No. 08-CV-309-LPS, 2019 WL 3290369 (D. Del. July 22, 2019).......................................7, 8

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  875 F.3d 1369 (Fed. Cir. 2017)............................................................................................2

*PureWick Corp. v. Sage Prods., LLC*,
  666 F. Supp. 3d 419 (D. Del. 2023).......................................................................................7

*PureWick Corporation v. Sage Products LLC*,
  1-19-CV-01508-MN, D.I. 368 (D. Del. Mar. 31, 2023)........................................................18

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992)....................................................................................2, 3, 9, 16

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
  707 F. Supp. 2d 737 (N.D. Ohio 2010).................................................................................17

*Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*,
  817 F.3d 1293 (Fed. Cir. 2016)............................................................................................14

*Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*,
  No. 16-CV-00284-LPS, 2019 WL 3240521 (D. Del. July 18, 2019).......................................8

*Stryker Corp. v. Zimmer, Inc.*,
    837 F.3d 1268 (Fed. Cir. 2016) ................................................................................17

*Vectura Ltd. v. GlaxoSmithKline LLC*,
    No. 16-CV-00638-RGA, 2019 WL 4346502 (D. Del. Sept. 12, 2019) ............................18, 19

*WBIP, LLC v. Kohler Co.*,
    No. 11-10374-NMG, 2014 WL 585854 (D. Mass. Feb. 12, 2014),
    *aff'd*, 829 F.3d 1317 (Fed. Cir. 2016) ................................................................................4, 16

**Other Authorities**

Fed. R. Civ. P. 50(b) ................................................................................1

Fed. R. Civ. P. 59 ................................................................................1

## I.        INTRODUCTION

Even if the underlying judgment remains intact after the Court rules on Guardant's post-judgment motion, TwinStrand's requests for enhanced damages and attorneys' fees should be denied entirely.  TwinStrand has failed to meet the high bars set by the U.S. Supreme Court under *Halo* and *Octane Fitness* for either form of relief.  In particular, TwinStrand has not shown "egregious infringement"—a stricter (and different) standard than mere willfulness—as required to support enhanced damages.  Nor has TwinStrand shown the case is "exceptional"—*i.e.*, standing out from others with respect to the substantive strength of Guardant's positions or the reasonableness of its litigation conduct—as required to support a fee award.

For ongoing royalties, TwinStrand has not justified any rate higher than the ███ that TwinStrand's own expert says is the baseline effective royalty rate.  TwinStrand's punitive proposal to double or triple the rate based on the jury's willfulness finding does not reflect the economic realities of the hypothetical post-verdict negotiation.  Nor is it consistent with how the District of Delaware has approached ongoing royalties in cases where the jury found willfulness.

On the remaining requested relief, Guardant (1) agrees in principle that supplemental damages are appropriate for the period between July 1, 2023 and the Court's entry of judgment, but needs to see TwinStrand's analysis after Guardant provides the requested sales data, and (2) does not oppose TwinStrand's requests for pre-judgment and post-judgment interest.

Finally, Guardant maintains its position that the judgment should be vacated, or at least modified, for the reasons explained in its pending motion under Rules 50(b) and 59.  But Guardant's response to TwinStrand's post-judgment motion is naturally premised on the assumption that the judgment remains intact.  Nothing in this response brief derogates from Guardant's positions in its own post-judgment motion or admits TwinStrand is entitled to *any* relief.

## II.     NO ENHANCED DAMAGES SHOULD BE AWARDED

### A.     "Egregious Infringement" Is a Prerequisite for Enhanced Damages.

Enhanced damages are "a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 103-04. TwinStrand has the burden to show it is entitled to enhanced damages. *Id.* at 107.

A jury finding of willfulness does not compel an award of enhanced damages. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017) ("[A]n award of enhanced damages does not necessarily flow from a willfulness finding."); *Nox Med. Ehf v. Natus Neurology Inc.*, No. 1:15-CV-00709-RGA, 2018 WL 6427686, at *1 (D. Del. Dec. 7, 2018) ("A jury's finding of willful infringement is a prerequisite to enhancement of damages but is not by itself sufficient." (citing *Halo*, 579 U.S. at 103-04)). Rather, "such damages are generally reserved for *egregious* cases of culpable behavior." *Halo*, 579 U.S. at 104 (emphasis added). "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct," *id.* at 105, not through the hindsight lens of the trial outcome.

Even when a district court finds egregious conduct, it still has the discretion to deny enhanced damages: "[N]one of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Id.* at 106. Further, "[t]he *Halo* test merely requires the district court to consider the particular circumstances of the case to determine whether it is egregious." *Presidio Components*, 875 F.3d at 1383. "[T]he district court is not required to discuss the *Read* factors." *Id.* at 1382 (referring to *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)). Here,

TwinStrand has tried to bundle most of the *Read* factors into two main arguments, one focused on its copying allegations and the other focused on litigation conduct and the closeness of the case. None of TwinStrand's arguments supports enhancement, much less the trebling it seeks.

**B.      TwinStrand's "Copying" Argument Does Not Support Enhanced Damages.**

TwinStrand relies on its flawed "copying" story for 6 of the 9 *Read* factors. As explained in Guardant's own post-judgment motion (D.I. 531 at 14-16), there is no substantial evidence that Guardant deliberately copied TwinStrand's technology into its products at all. The same arguments regarding why there was no copying at all apply here, even if the Court upholds willfulness. Moreover, even if the Court finds that some degree of copying occurred, TwinStrand's evidence does not rise to the level of egregious conduct that supports enhanced damages here. Consistent with case law from this district, the Court should deny enhancement even if it finds copying occurred.

**1.      TwinStrand's "copying" evidence does not show egregiousness.**

TwinStrand's "copying" story is based on the 2012 Schmitt article—a published research paper accessible by anyone. Tr. Day 1 at 177:4-178:8; *see also* Tr. Day 1 at 95:15-18 (trumpeting Schmitt article as "a scientific paper that was published in a prestigious research journal"). TwinStrand has never alleged that Guardant copied an issued patent, nor even a patent application. In fact, the asserted patents did not issue until 2019 and 2020. *See* Tr. Day 1 at 208:13-209:13. Nor did TwinStrand allege that Guardant copied a commercial embodiment of the invention. These facts alone distinguish the "copying" cases on which TwinStrand relies. *See, e.g.*, *Applera Corp. v. MJ Research Inc.*, 372 F. Supp. 2d 233, 236-37 (D. Conn. 2005) (doubling damages where defendant deliberately copied feature of plaintiff's commercial embodiment to encourage customers to infringe asserted process patents); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 609 (D. Del. 2007) (doubling damages where, after

receiving notice of plaintiff's issued patent claims, defendant "applied for its own patent claiming what appears to be, in essence, the same technology"); *WBIP, LLC v. Kohler Co.*, No. 11-10374-NMG, 2014 WL 585854 (D. Mass. Feb. 12, 2014), *aff'd*, 829 F.3d 1317 (Fed. Cir. 2016) (50% enhancement where defendant (1) copied patentee's commercial embodiments of invention after quizzing patentee's engineer at trade show, (2) requested internal funding to develop product with same two features that patentee's engineer had described; (3) specifically mentioned patentee's products and earlier-issued patent in funding request).

In fact, TwinStrand's "copying" evidence is not tied to the patented invention at all. Dr. Pachter ████████████████████████████████████████████████████. Tr. Day 2 at 504:24-505:14. Dr. Pachter also ████████████████████████████████████████████

████████. Tr. Day 2 at 505:22-506:2. TwinStrand has tried to skirt these realities with the more generalized claim that Guardant copied its "technology". *See, e.g.*, Tr. Day 5 at 1177:14-22, 1179:14-18; TS Brief at 1. But TwinStrand never showed that Guardant deliberately copied *the patented invention*. So even if this Court gives credence to TwinStrand's "copying" story, it is a weak strain of copying that hardly rises to the level of "egregious" conduct required by *Halo*.

The evidence showed that Guardant merely conducted unsuccessful experiments with the wet lab steps disclosed in the Schmitt paper. TwinStrand's only evidence of alleged copying consists of (A) two Guardant 2012 emails sharing the Schmitt article (PTX-147 & JTX-061); and (B) two experiments in a Guardant 2012 lab notebook (JTX-067) that attempted to test the randomized adaptors discussed in the Schmitt article. Tr. Day 2 at 385:17-390:1. One of the e-mails showed that Guardant's intent was to "perhaps license" the technology "if it's good." PTX-147; Tr. Day 4 at 1052:11-1053:3. The notebook excerpts, in turn, show the experiments failed and Guardant's scientist abandoned the method. JTX-067 ("Tried to ligate, worked

poorly"; "Time to change direction"; "Conclusion: Move on to constrain sequence adaptors");
Tr. Day 2 at 511:19-513:16.  This evidence is a strong counterweight to the "copying" story.

Further, the Guardant experiments covered only wet lab steps, not bioinformatics.  Tr.
Day 2 at 506:4-508:25; Tr. Day 3 at 799:19-23; Trial Day 4 at 1036:12-1037:19.  There is no
evidence Guardant experimented with the Schmitt article's method in connection with
bioinformatics code.  Tr. Day 2 at 507:7-17.  But the claims require practicing all the
bioinformatics steps, which TwinStrand itself identified as the most important and valuable steps
in this case.  *See, e.g.*, Tr. Day 2 at 489:19-490:5; Tr. Day 3 at 602:21-603:9.

Guardant also presented significant additional evidence countering TwinStrand's
"copying" allegations.  For example, Guardant never incorporated the Schmitt article's random
adaptors into any Guardant product, ██████████████████████████████████  *See,
e.g.*, JTX-022 at 12; Tr. Day 2 at 423:24-429:2; Tr. Day 3 at 681:18-682:3.  Guardant's co-
founder and co-CEO, Dr. Talasaz, also explained in detail how Guardant independently
developed its products.  Tr. Day 4 at 1028:2-1034:15.  ██████████████████████
████████████████████████████████████████████████████████.  Tr.
Day 3 at 757:13-758:22, 816:15-818:22.  ████████████████████████████
████████████████████████████████████████████████.

For all these reasons, TwinStrand's "copying" allegations do not support a finding of
egregiousness even if the willfulness verdict remains intact.

## 2.    The parties' license negotiations are not evidence of copying.

TwinStrand's assertions of "bad faith" license negotiations (*see* TS Brief at 5) have
nothing to do with alleged "copying" of the 2012 Schmitt article and are also unsupported by the
record.  If anything, the years of licensing negotiations—which continued even after the
University of Washington reneged on what Guardant believed ████████████████—

illustrate Guardant's good faith.  Punishing parties for engaging in ultimately unsuccessful licensing negotiations would discourage collaboration and encourage litigation.

The record shows Guardant was interested in a license to explore whether TwinStrand's technology could work with future products.  Tr. Day 3 at 706:22-707:25.  There is not a shred of evidence that Guardant believed it needed a license to continue selling products it had developed.  And unlike a "pirate" who refuses to license any patents, Guardant had an established track record of negotiating and paying for licenses to third parties' technology.  Tr. Day 3 at 699:20-702:5, 703:9-704:25.  It defies common sense to suppose that, despite consummating multiple other in-bound patent licenses during the same time period, Guardant negotiated with Plaintiffs for years as an elaborate ruse just to provide cover for alleged copying.

In fact, in October 2015, the University of Washington commended Guardant for a "professional" and "transparent" negotiating process and apologized for walking away from the parties' term sheet.  Tr. Day 3 at 713:1-15; JTX-90.  Despite its disappointment, Guardant approached UW again with an increased offer.  Tr. Day 3 at 714:12-716:23.  Guardant then started negotiating with TwinStrand after UW pointed Guardant in that direction.  Tr. Day 3 at 716:24-717:14.  And Guardant continued negotiating with TwinStrand for several years even though TwinStrand rebuffed multiple offers and behaved in ways that Guardant considered unreasonable.  Tr. Day 3 at 717:15-728:4.  The fact that TwinStrand wanted more money or more business information from Guardant does not support egregiousness.

Finally, TwinStrand complains that "███████████████████████████████ ██████" but that does not support egregiousness here.  The case TwinStrand cites had starkly different facts.  TS Brief at 5.  In *Arctic Cat*, the accused infringer tried to "covertly" and "surreptitiously" buy asserted patents through an agent about seven years after infringement had

begun and never approached the patentee to discuss a license. *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 198 F. Supp. 3d 1343, 1347, 1353-54 (S.D. Fla. 2016), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017). Here, by contrast, Guardant openly and directly engaged in license negotiations with UW, and then with TwinStrand, starting years before the issuance of the asserted patents. Far from showing "dismissiveness" and "disrespect" of TwinStrand's patent rights (TS Brief at 6), the license negotiations between the parties further negate TwinStrand's accusations of egregious conduct.

### 3.     District of Delaware case law supports no enhancement here.

Denying enhancement is most consistent with numerous post-*Halo* cases from this District, each including allegations of deliberate copying. In *PureWick*, for example, the plaintiff argued there was deliberate copying based on the jury's willfulness finding and the trial evidence. *PureWick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 447 (D. Del. 2023) (denying enhanced damages). But the Court found the evidence of copying was "not overwhelming," did not show "particularly egregious copying," and was countered by "evidence that [Defendant] was critical of Plaintiff's design and sought to design a better product." *Id.* At best for TwinStrand, its "copying" story fits this description for the reasons above.

In *ArcherDX*, the "evidence that Defendants had access to and tested Plaintiffs' technology" was insufficient to show deliberate copying notwithstanding the jury's willfulness finding. *ArcherDX, LLC v. Qiagen Scis., LLC*, No. 18-CV-01019-MN, 2022 WL 4597877, at *16 (D. Del. Sep. 30, 2022) (denying enhanced damages). Likewise here, the evidence showed merely Guardant's unsuccessful testing of wet labs steps in the published 2012 Schmitt article.

In *Power Integrations*, the Court denied enhanced damages despite "presum[ing] that the jury found some amount of deliberate copying by [defendant]." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 08-CV-309-LPS, 2019 WL 3290369, at *8 (D. Del. July

22, 2019).  The Court stated it "does not view the record here as one-sided or as demonstrating

egregious copying."  *Id.*  Here too, even if the Court were to adopt a similar presumption, the

trial record contains significant contrary evidence and no showing of egregious copying.

 The Court denied enhanced damages on similar grounds in *Siemens Mobility, Inc. v.*

*Westinghouse Air Brake Techs. Corp.*, No. 16-CV-00284-LPS, 2019 WL 3240521, at *8 (D. Del.

July 18, 2019).  There, the defendant forwarded a presentation about the plaintiff's product to its

legal counsel and implemented the same design after conducting a teardown of the product.  *Id.*

But the alleged copying occurred between the filing of the patent application and patent issuance,

and there was evidence that the defendant was critical of the plaintiff's design.  *Id.*  The Court

explained that "while the jury was free to find that Westinghouse copied, the evidence of

copying is not overwhelming, nor is there any evidence of particularly egregious copying" and

found that "copying provides only weak support for enhanced damages."  *Id.*  Here, the evidence

of copying is even more attenuated than in *Siemens* and does not support enhanced damages.

 In denying enhanced damages in *Nox*, the Court gave reduced weight to copying

"because the actions pre-dated the issuance of Plaintiff's patent."  *Nox Med. Ehf v. Natus*

*Neurology Inc.*, No. 1:15-CV-00709-RGA, 2018 WL 6427686, at *3 (D. Del. Dec. 7, 2018).

The Court did so even though "[t]he evidence shows that Defendant sent Plaintiff's commercial

product to Defendant's Chinese manufacturer and told the manufacturer to copy it, calling it the

'Nox knock off.'"  *Id.*  Here, the alleged copying also pre-dated patent issuance, but involved

only some unsuccessful experiments on a subset of steps in a published scientific paper.  Denial

of enhanced damages is thus even more appropriate than in *Nox*.

 Finally, in *Green Mountain Glass*, the Court denied enhanced damages despite finding

deliberate copying, "including that, a mere eight days after learning about the patent, Defendant

drafted a secret dossier in which it sought information regarding nineteen different aspects about Plaintiffs' technology." *Green Mtn. Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 621 (D. Del. 2018), *aff'd*, 773 F. App'x 619 (Fed. Cir. 2019).  TwinStrand's "copying" story is far more attenuated even if credited, so denying enhancement is even more appropriate.

### C.   TwinStrand Has Not Shown Unreasonable Litigation Conduct or that Guardant's Positions Lacked Merit.

The record shows Guardant litigated this case reasonably and asserted meritorious positions throughout the case.  TwinStrand's contrary arguments—under which it lumps together 4 of the 9 *Read* factors—fail to show egregious infringement as required by *Halo*.  Both sides litigated the case vigorously over several years, hundreds of docket entries, thousands of pages of filings, and five days of trial.  Both sides narrowed their case along the way, including TwinStrand's dropping of 2 of its 4 originally asserted patents three weeks before trial, one of which Guardant later invalidated in IPR.  Each side prevailed on some motions and claim construction issues and lost on others.

As shown in its JMOL/new trial motion, in this brief, and throughout the case, Guardant's positions had substantial merit.  The fact that the jury ultimately found that TwinStrand had met its burden by a preponderance of the evidence on 3 patent claims from a common specification (out of 108 claims originally asserted from 4 patents) does not make any infringement "egregious" or the case "exceptional."  No evidence supports TwinStrand's baseless and inflammatory accusations about Guardant's purported litigation strategy.  *See* TS Brief at 14.  Nor do TwinStrand's cherry-picked examples of supposedly "vexatious" conduct—addressed in turn below—withstand scrutiny or warrant the extraordinary remedies it seeks.

### 1.   There was no contradiction between Guardant's non-infringement defense at trial and its earlier litigation positions and licensing efforts.

TwinStrand's baseless accusations of "flip-flopping" merely demonstrate its own

improper attempt to have it both ways.  *See* TS Brief at 6-8.  Guardant asserted patent claims that required the use of cfDNA.  ███████████████████████████████████████████

████████████████████████████████████████████.  Ex. A (Guardant's 4/1/2022 Initial

Infringement Contentions, internal Ex. 1 and Ex. B at pp. 1-21); DTX0342.[1]  Yet TwinStrand

then stated in its sworn discovery responses that "████████████████████████████████████████

████████████████████████████████████████."  Ex. B, Plaintiffs' Response to Rog. No.

22 at p. 13.  TwinStrand also represented in discovery that █████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████.  Ex. B, Ex. C at ¶¶ 59-99; Ex. D, Salk Depo. Tr. at 75:4-13.  During

discovery, Guardant also obtained evidence that ███████████████████████████████████

███████████.  Ex. E, Ex. F, Ex. G, Ex. H, DTX0342.

      In light of TwinStrand's sworn representations and the other evidence obtained during

discovery—and notwithstanding the initial evidence that ████████████████████████████

███████████████████████████████████—Guardant acted precisely as it should have in

dismissing its infringement claims.  This is not a "flip-flop" by Guardant; rather, this is where the

evidence led.  Guardant's conduct therefore was the opposite of bad faith.

      It is actually TwinStrand who has flip-flopped, now arguing that DCS is suited to cfDNA

despite having taken the opposite position in response to Guardant's infringement claims.  *See*

Tr. Day 1 at 245:14-23 (██████████████████████████████████████████████████████

███████████); Tr. Day 1 at 247:1-248:5 (██████████████████████████████████████████

██████████████████████████████████).  TwinStrand also conflates the issue of

what TwinStrand's asserted patent claims require with the separate issue of the capabilities (or

_____

[1] References to Ex. __ in this brief are references to the Castellano Declaration, filed herewith.

lack thereof) of TwinStrand's products.  Guardant explained throughout the trial why the DCS method as claimed in TwinStrand's asserted patents was unsuitable for use with cfDNA.  This question is different from whether TwinStrand's products can be used with cfDNA.

TwinStrand also fails to identify any inconsistency in Guardant's characterization of the Salk 2019 publication.  Guardant cited this publication and TwinStrand's communications with customers that pointed them to the publication as evidence of inducement to rebut TwinStrand's motion for summary judgment of no indirect infringement.  D.I. 375 at 17-18 (describing TwinStrand's maintenance of Salk 2019 on its website as an "example of TwinStrand's continuing encouragement to use the accused products and services with cfDNA").  Guardant did not characterize Salk 2019 as a successful application of TwinStrand's patents to cfDNA.

The evidence also shows that the pre-suit license negotiations focused on potential future use in new products, not the accused products, and that the parties discussed working together to improve DCS so that it potentially could be used with cfDNA.  Tr. Day 3 at 706:22-707:25. There is no contradiction between Guardant's efforts to collaborate on potential new solutions and its well-supported litigation positions that Guardant's accused products did not use the claimed methods because they are unsuitable for use with cfDNA.

### 2. Guardant's invalidity defenses were reasonable.

TwinStrand wrongly accuses Guardant of asserting unreasonable invalidity defenses.  *See* TS Brief at 8-11.  In slapping this label on Guardant's § 103 defenses, TwinStrand improperly relies on events that occurred in the IPR proceedings *after* the expert report deadlines in this case.  TwinStrand also overlooks the detailed element-by-element obviousness analyses in Dr. Quackenbush's expert reports, which adequately addressed both motivation to combine and reasonable expectation of success—as well as his expert deposition, where he answered in detail TwinStrand's counsel's questions about reasonable expectation of success.  Ex. I at ¶¶ 176, 213-

215, 256, 285; Ex. K at ¶ 56, 79, 83-84, 142, 147, 148; Ex. L at 148:7-155:6, 197:20-215:1.)
And the Court's narrowing order required Guardant to drop many obviousness combinations,
just as TwinStrand was required to drop many patent claims it had originally asserted.

As to Guardant's § 112 arguments, TwinStrand's citations are incomplete.  The § 112
argument for the '631 patent spans ¶¶ 177-193 of Dr. Quackenbush's opening expert report (not
just ¶ 184).  Ex. I.  The § 112 argument for the '127 patent spans ¶¶ 286-298 of Dr.
Quackenbush's opening expert report (not just ¶¶ 287 and 291).  Ex. I.  TwinStrand also ignores
the discussion of these defenses in Dr. Quackenbush's reply report.  Ex. K at ¶¶ 70-71, 134.  And
the Court rejected TwinStrand's attempt to strike Dr. Quackenbush's opinions on indefiniteness,
which was also briefed during claim construction.  D.I. 466 at 8.  TwinStrand also selectively
cites paragraphs of the § 112 arguments for the '699 and '951 patents that TwinStrand dropped
shortly before trial.  *See* Ex. I at ¶¶ 216-230, 257-271.  And while Dr. Quackenbush's discussion
of Guardant's § 101 defense for the '631 patent only briefly summarized the point, it was not
necessary for Guardant to support this legal defense with expert testimony at all.

Finally, there was nothing improper about Guardant's decision to drop its invalidity
defenses early in trial, especially in light of the time limitations at trial and complexity of the
infringement issues being presented to the jury.  *See Chrimar Sys., Inc. v. Alcatel-Lucent Enter.
USA, Inc.*, No. 6:15-CV-00163-JDL, D.I. 412 at 3-4 (D. Del. Jan. 23, 2017) (giving "deference to
a party's trial strategy that narrows issues to be presented to the jury" and warning of the
"chilling deterrent effect on this type of encouraged behavior" if case were found exceptional on
this basis), *aff'd*, 732 F. App'x 876, 891 (2018).  TwinStrand itself narrowed its case
substantially, dismissing two entire patents three weeks before trial.  Yet TwinStrand presumably
believes there was nothing improper about its own narrowing.  Just because TwinStrand

prevailed on the issues that were tried does not render Guardant's narrowing improper.

### 3.   Guardant did not try to circumvent the Court's orders.

TwinStrand's circumvention arguments lack merit too.  *See* TS Brief at 11-12.

First, the challenged expert reports were served *before* the Court ruled on Guardant's objections to the R&R on claim construction.  *See* D.I. 320 (June 2, 2023 order overruling objections); D.I. 273, 302, 316, 318 (notices of service of expert reports in April and May 2023). So the Court's decision to strike 14 of the 47 challenged paragraphs from Dr. Quackenbush's reports (and none from Dr. Prabhu's) was not and could not have been based on circumvention. D.I. 466 at 6-9.  And Guardant did not attempt to rely on any of the stricken portions at trial.

Second, the Court agreed to consider Guardant's prosecution history estoppel argument and ruled on the merits.  D.I. 462, 475.  TwinStrand does not and cannot identify any order Guardant supposedly violated in presenting that argument.

Third, while the Court found a violation of the narrowing order, it ultimately denied TwinStrand's motion to strike certain portions of Dr. Quackenbush's report on this ground, finding: "However, the Court finds this factor lacks significant weight when, at least in part, both parties violated the narrowing order, the motion to strike was late, and there was relatively little prejudice."  D.I. 466 at 5.  By contrast, the Court struck TwinStrand's untimely disclosed DOE theory.  D.I. 467.  TwinStrand has not shown "egregious" infringement or an "exceptional" case.

### 4.   Guardant did not cite bad case law to the Court.

TwinStrand's accusations that Guardant twice cited bad cases also lack merit.  *See* TS Brief at 12-13.  It is telling that, from the numerous briefs and arguments in this case, these two specious examples are the best that TwinStrand can offer.

First, Guardant properly cited *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817 (Fed. Cir. 2010) and *Applied Materials, Inc. v. Multimetrixs, LLC,* No. 06-

13

CV-07372-MHP, 2008 WL 2892453, at *1 (N.D. Cal. July 22, 2008), *aff'd*, 404 F. App'x 493 (Fed. Cir. 2010), in opposing TwinStrand's motion to dismiss its inequitable conduct defenses. Guardant cited these cases to show that courts have recognized disclosures related to inventorship are highly material and critical to obtaining a patent.  D.I. 534, Ex. J at 30:9-16. TwinStrand has not shown any way in which *Therasense* "abrogated" these cases on this point. In fact, after *Therasense*, courts in this Circuit continue to cite *Advanced Magnetic Closures* for the same proposition.  *See, e.g.*, *Belcher Pharms., LLC v. Hospira, Inc.*, No. 17-CV-00775-LPS, 2019 U.S. Dist. LEXIS 103012, at *1-2 (D. Del. June 5, 2019); *Evonik Degussa GMBH v. Materia Inc.*, No. 09-CV-00636-NLH, 2011 U.S. Dist. LEXIS 156390, at *19 (D. Del. Dec. 13, 2011); *Auxilium Pharms., Inc. v. Watson Labs., Inc.*, No. 12-CV-03084-JLL, 2013 U.S. Dist. LEXIS 142462, at *14 (D.N.J. Oct. 2, 2013); *Junker v. Med. Components, Inc.*, No. 13-CV-04606-MSG, 2016 U.S. Dist. LEXIS 176409, at *14 (E.D. Pa. Dec. 21, 2016).

Second, Guardant respectfully maintains that it properly cited *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016), in opposing TwinStrand's MIL on IPR estoppel.  Guardant's discussion of *Shaw* arose from the fact that *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022), did not address the situation at hand: the assertion of grounds in district court that were included in an IPR petition on which institution was denied. D.I. 460-15 at 14.  In fact, Guardant expressly stated in its opposition that "aspects of *Shaw* were overruled by *CalTech* in view of the Supreme Court's edict in *SAS* . . . ."  D.I. 460-15 at 15. That the Court rejected Guardant's position and disagreed with its interpretation of a footnote in *Click-to-Call Techs. LP v. Ingenio Inc.*, 45 F.4th 1363 (Fed. Cir. 2022), that discussed *Shaw*'s reasoning does not make Guardant's litigation conduct unreasonable.  *See* D.I. 469 at 1-3.

**5.    There was no impropriety in Guardant's closing arguments about Dr. Pachter's credibility.**

Finally, there was nothing egregious or exceptional about Guardant's counsel's arguments about Dr. Pachter's credibility, much less anything that would contribute to making the alleged infringement "egregious" or the case as a whole "exceptional."  Dr. Pachter was TwinStrand's main witness on infringement, and it was entirely appropriate for Guardant to challenge his credibility in closing arguments to the jury based on the evidence in the record. There was also nothing improper about the forceful language used in making this argument.  Nor did Guardant's counsel do anything wrong in correctly pointing out that TwinStrand's lawyers facilitated his subsequently recanted direct testimony that the services infringe.  Dr. Pachter himself admitted on cross-examination that—contrary to his direct testimony—the Guardant services do not infringe.  Tr. Day 2 at 523:15-530:19; *see also* Tr. Day 5 at 1227:6-1228:10 (Guardant's closing argument on services).  Guardant also specifically explained the evidentiary basis for its characterizations of Dr. Pachter's testimony.  Tr. Day 5 at 1195:20-1230:5. TwinStrand had the opportunity to address Guardant's counsel's characterizations in its reply closing argument, and did so directly.  Tr. Day 5 at 1244:5-15.  And the Court declined to issue a curative instruction in response to TwinStrand's objection.  Tr. Day 5 at 1251:10-24.

In short, Guardant's litigation conduct and substantive positions do not support enhanced damages or an exceptional case finding.

### D.      The Case Was At Least Close.

TwinStrand's argument about the closeness of the case incorporates its arguments about litigation conduct and fails for the same reasons.  *See* TS Brief at 14.  Moreover, Guardant's post-judgment motion details numerous shortcomings in TwinStrand's attempt to show infringement.  D.I. 531 at 2-12.  Even if the Court concludes that substantial evidence supports TwinStrand's claims, these arguments demonstrate that the case was at least close.  And as explained above, TwinStrand dropped half its asserted patents three weeks before trial, and each

party won and lost its fair share of motions and claim construction arguments in the case. *Read* factor 5 therefore strongly *dis*favors enhanced damages.

      **E.**    **In Sum, TwinStrand Has Not Shown that Guardant Engaged in Any Egregious Conduct that Warrants Enhanced Damages.**

    TwinStrand's principal arguments for enhancement thus fail. Its residual arguments do not move the dial either. For example, TwinStrand quotes *Novozymes*, 474 F. Supp. 2d at 611, for the proposition that "'continu[ing] to infringe after the liability trial also supports an enhanced award.'" TS Brief at 6. But the plaintiff in *Novozymes* sought an injunction, whereas TwinStrand seeks an ongoing royalty, which "weighs against penalizing [the defendant] for failing to take remedial action post-verdict," *WBIP*, 2014 WL 585854, at *6. TwinStrand also addresses *Read* factor 5—"the defendant's size and financial condition"—in conclusory terms. TS Brief at 14-15. TwinStrand fails to show how this factor allegedly supports egregiousness in the particular circumstances of the case, as *Halo* requires. This factor hence should be given no weight. Nor should TwinStrand's attempt to paint a David vs. Goliath picture of a "large, publicly traded company" against a "small startup" (TS Brief at 15) be countenanced where TwinStrand was represented by a large team from prominent law firms and emphasized at trial that the University of Washington, itself a large entity, was also a plaintiff. When the totality of the circumstances are evaluated under *Halo*'s "egregiousness" standard, TwinStrand has failed to meet its burden to show any enhanced damages, much less the trebling it seeks, are warranted.

## III.    ATTORNEYS' FEES SHOULD BE DENIED BECAUSE THE CASE IS NOT EXCEPTIONAL

    TwinStrand fails to show this case is exceptional. *See* TS Brief at 15. An exceptional case is one "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health &*

*Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* TwinStrand has the burden to show exceptionality. *Id.* at 557-58. Both sentences of TwinStrand's argument in this section of its brief (TS Brief at 15) are wrong.

First, citing a pre-*Octane Fitness* case, TwinStrand wrongly contends that "willfulness alone" is enough to find a case exceptional. TS Brief at 15 (citing *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004)). TwinStrand instead must satisfy either the substantive strength prong or the unreasonable litigation conduct prong of *Octane Fitness* based on the totality of the circumstances. 572 U.S. at 554; *see also Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016) (vacating exceptional case finding and remanding because "[t]hough we uphold the district court's willfulness determination, it does not necessarily follow that the case is exceptional").

Second, citing a pre-*Octane Fitness* and pre-*Halo* Ohio district court case, TwinStrand wrongly tries to merge the enhancement and exceptional case inquiries. TS Brief at 15 (citing *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 757 (N.D. Ohio 2010)). The standards are different, with enhancement requiring "egregious" infringement (*Halo*) and exceptionality focusing on the litigation process (*Octane Fitness*). In any event, TwinStrand's arguments fail on their merits for the reasons explained above.

## IV.   AN ONGOING ROYALTY SHOULD NOT EXCEED ▮▮▮

Guardant does not oppose in principle an ongoing royalty. Although TwinStrand advocates for a 6% floor to the ongoing royalty rate, TwinStrand acknowledges that "the 6% royalty awarded by the Jury corresponds to an effective ▮▮▮ royalty rate for ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (accounting for Guardant's increased contributions to product success) using the royalty rate structure [Dr. McDuff] testified the parties would agree to during a

hypothetical negotiation." TS Brief at 18. The appropriate ongoing royalty rate is therefore no

higher than ███ *See* Declaration of Stephen Becker, Ph.D. ("Becker Decl.") at ¶¶ 10-12.

TwinStrand has not identified any circumstances that would warrant an ongoing rate

higher than the jury verdict. *See PureWick Corporation v. Sage Products LLC*, 1-19-CV-01508-

MN, D.I. 368 at 32-33 (D. Del. Mar. 31, 2023) (limiting ongoing royalty rate to jury's 6.5% rate

because, while plaintiff may be in a stronger bargaining position post-verdict, plaintiff did not

point to other circumstances that indicated that it would be able to negotiate a higher rate);

Becker Decl. at ¶¶ 13-49. The same jury that found willfulness adopted a 6% royalty rate, which

TwinStrand agrees is consistent with a ████████████████████████. The

6% royalty rate is already near the high end of the royalty rates proposed at trial. Even if that

rate remains intact after post-judgment motions, the record also would support a lower royalty

rate, so a ███ ongoing royalty is more than enough to compensate TwinStrand going forward.

*See, e.g.*, Tr. Day 4 at 1071:18-1088:2 (Dr. Becker's market evidence testimony).

TwinStrand sells its own products only for research purposes and does not compete with

Guardant in the diagnostics space (and lacks FDA approval to do so), Tr. Day 1 Tr. at 231:10-17,

249:23-25, and TwinStrand will benefit from payment of an ongoing royalty. These facts weigh

strongly against enhancing an ongoing royalty. *See, e.g.*, *Vectura Ltd. v. GlaxoSmithKline LLC*,

No. 16-CV-00638-RGA, 2019 WL 4346502, at *8 (D. Del. Sept. 12, 2019) (In declining to

enhance the ongoing royalty rate in light of the jury's willfulness finding, the court noted that it

"agree[s] with the Eastern District of Texas that willfulness is not an appropriate ground to

enhance an ongoing royalty rate where the plaintiff is a non-competitor who benefits from the

defendant's ongoing infringement."); *EMC Corporation et. al. v. Zerto, Inc.*, 12-CV-00956-

GMS, 2017 WL 3434212, at *5 (D. Del. Aug. 10, 2017) (declining to enhance ongoing royalty;

"In fact, as the court recognized in *Erfindergemeinschqft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 3034655, at *9 (E.D. Tex. July 18, 2017), 'the defendant's continuing infringement . . . benefits the plaintiff by generating sales from which ongoing royalties can be awarded.'").

TwinStrand also wrongly asserts that "the Jury's willfulness finding" justifies "a possible 2-3 multiplier" to the ▮▮ rate for ongoing royalties.  TS Brief at 18.  As explained above, the willfulness finding does not justify enhancing the past damages award.  For the same reasons, willfulness does not justify enhancing an ongoing royalty.  Moreover, ongoing royalties are designed merely to compensate the patentee for future acts of infringement, yet TwinStrand's request to enhance the ongoing royalty based on willfulness is an improper attempt to punish Guardant.  *See Halo*, 579 U.S. at 103-04 (enhancement of past damages is a "punitive" or "vindictive" sanction, and willfulness alone is not a sufficient reason to impose it); *see also Philip Morris Prods. SA v. RJ Reynolds Vapor Co.*, No. 1-20-CV-00393, 2023 WL 2843796, at *13 (E.D. Va. Mar. 30, 2023) (declining to enhance ongoing royalty "because Reynolds' continued infringement will be permitted pursuant to a court-ordered ongoing royalty" and even if such conduct "could be considered intentional or deliberate infringement," patentee had not shown that defendant's "post-verdict conduct rises to the level of egregiousness warranting the punitive sanction of enhanced damages"); *Vectura*, 2019 WL 4346502, at *8 ("If it is improper to use willfulness as a basis for enhancing the ongoing royalty in a case for which an injunction has been granted and stayed, it would seem at least equally improper to use willfulness as a basis to enhance the ongoing royalty in a situation in which the equities would not even permit the issuance of an injunction in the first place.  And it may be even more improper in a case such as this one, which involves a non-competitor, in which the plaintiff chooses not to seek an

injunction . . . ." (citation and internal quotations omitted)).  And the speculative possibility of enhanced damages in a future hypothetical infringement action is not enough to show the parties would have agreed to *any* enhancement—much less double or treble, as TwinStrand seeks—in a post-verdict hypothetical negotiation.  *See* Becker Decl. at ¶¶ 20, 40-49.

Finally, unlike TwinStrand's proposed order, an order from the Court regarding an ongoing royalty should make clear it applies only to Guardant's accused products as they were designed and operated at the time of the verdict.  If the products are redesigned to operate in a manner that is more than colorably different from those found to infringe, then they cannot be subject to the ongoing royalty.  *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-00630-LHK, 2018 WL 905943, at *8 (N.D. Cal. 2018) ("The Court now applies *TiVo's* two-step analysis to each design-around.  As explained above, the Court first must determine whether the newly accused product is 'more than colorably different from the product found to infringe.'").  At a minimum, a plaintiff must first prove that any redesigned products are not more than colorably different from the products found to infringe (*i.e.*, the standard used in contempt proceedings for permanent injunctions).

## V.    SUPPLEMENTAL DAMAGES AND PRE-/POST-JUDGMENT INTEREST

Guardant agrees in principle that supplemental damages are appropriate for the period between July 1, 2023 and the Court's entry of judgment.  However, TwinStrand has failed to justify its proposed 6% royalty rate for this period, as opposed to the ▮▮▮ rate that TwinStrand identifies for the ▮▮▮▮▮▮▮▮▮▮ in its ongoing royalty analysis.  Guardant therefore will provide the requested additional sales data to TwinStrand and take a position on TwinStrand's proposed calculations when TwinStrand provides them.  Guardant does not oppose TwinStrand's requests for pre-judgment and post-judgment interest.

Dated:  April 1, 2024

**Of Counsel:**

Mark Fowler (admitted *Pro hac vice*)
Susan Krumplitsch (admitted *Pro hac vice*)
Monica De Lazzari (admitted *Pro hac vice*)
Peiyao Zhang (admitted *Pro hac vice*)
**DLA PIPER LLP (US)**
3202 Hanover Street, Suite 100
Palo Alto, California 94304
Telephone: 650-833-2048
Facsimile: 650-687-1138
mark.fowler@us.dlapiper.com
susan.krumplitsch@us.dlapiper.com
monica.delazzari@us.dlapiper.com
peiyao.zhang@us.dlapiper.com

Ellen Scordino (admitted *Pro Hac Vice*)
Nancy C. Braman (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
33 Arch Street
26th Floor
Boston, MA 02110-1447
Telephone: 617-406-6085
ellen.scordino@us.dlapiper.com
nancy.braman@us.dlapiper.com

Tracy Block (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4733
Facsimile: (917) 778-8733
tracy.block@us.dlapiper.com

Travis Jensen (admitted *Pro Hac Vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Rd
Menlo Park, CA 94025-1015
Telephone: (650) 614-7458
Facsimile: (650) 614-7401
tjensen@orrick.com

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Jeff Castellano*
Brian A. Biggs (DE Bar No. 5591)
Jeff Castellano (DE Bar No. 4837)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
jeff.castellano@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Defendant Guardant
Health, Inc.*