## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TWINSTRAND BIOSCIENCES, INC. &
UNIVERSITY OF WASHINGTON,

        Plaintiffs,

    v.

GUARDANT HEALTH, INC.,

        Defendant.

C.A. No. 21-1126-GBW-SRF

PUBLIC VERSION OF DI # 589
FILED: December 2, 2024

### DEFENDANT GUARDANT HEALTH, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO SUPPLEMENT POST-TRIAL BRIEFING

Defendant Guardant Health, Inc. ("Guardant") submits this reply in support of its motion to supplement post-trial briefing (D.I. 583).

### INTRODUCTION

TwinStrand argues that the Court should ignore the Exact License and its ▮▮▮▮▮ ▮▮ for an exclusive license to the patents-in-suit. First, TwinStrand asserts it is not relevant to past damages because the trial record did not include it. But TwinStrand does not dispute that licenses executed after the hypothetical negotiation can be used to inform the past damages analysis. Supplemental briefing will give Guardant the opportunity to show that the Exact License—which includes the asserted patents, the same technology, and one of the same parties as the hypothetical license—renders the jury's damages award unsupportable and supports Guardant's request for a new trial on damages. Second, TwinStrand asserts that the Exact License is not relevant to ongoing royalties. But that assertion is contradicted by Federal Circuit law, and undermined by TwinStrand's repeated assertions that, *e.g.*, "significant additional discovery would be required to assess the impact" of the Exact License. D.I. 586 at 6; *see also id.* at 2-3. Moreover,

Guardant is not asking to "reopen the trial record"—a phrase that appears only in TwinStrand's opposition, not Guardant's motion. Rather Guardant seeks only to modify the post-trial briefing schedule to permit a short submission with a limited expert declaration.[1]

## ARGUMENT

### A.    The Exact License Is Relevant to Both Ongoing Royalties and Past Damages

Guardant separately addressed the relevance of the Exact License to an ongoing royalty (D.I. 583 at 6-7) and past damages (*id.* at 7). TwinStrand is thus incorrect that Guardant "conflates" them. D.I. 586 at 1. TwinStrand agrees that post-verdict developments are relevant to an ongoing royalty. In *XY v. Trans Ova Genetics* (cited by TwinStrand at page 1 of its opposition) the Federal Circuit held that "post-verdict factors should drive the ongoing royalty rate calculation in determining whether such a rate should be different from the jury's rate." 890 F.3d 1282, 1297 (Fed. Cir. 2018). A license to the patents-in-suit close to the hypothetical negotiation date (such as the Exact License) is a quintessential example of a relevant "post-verdict factor." For this reason, "district courts may award a lower ongoing royalty rate if economic factors have changed in the infringer's favor post-verdict."  *Id.* at 1298. They may also take "additional evidence…to account for any additional economic factors arising out of the imposition of an ongoing royalty."  *Paice LLC v. Toyota Motor Corp.,* 504 F.3d 1293, 1314-15 (Fed. Cir. 2007).[2]

---

[1] TwinStrand suggests that there is something improper in Guardant's position that the Exact License may be relevant to more than one issue (standing and damages, *e.g.*). Guardant's initial communications were focused on standing because the public information suggested that TwinStrand granted to Exact an exclusive license to the patents-in-suit. D.I. 583, Ex. 3. The public information did not include financial terms or other details (D.I. 583, Ex. 2), and therefore it was not until TwinStrand finally produced the unredacted Exact License that Guardant could evaluate its relevance to damages. D.I. 583 at 4-5. Guardant has never taken the position that the Exact License is irrelevant to standing and neither does TwinStrand. That the Exact License is relevant to at least two issues is not a basis to ignore it altogether, as TwinStrand proposes.

[2] *Paice* authorizes post-verdict discovery on issues related to an ongoing royalty. The procedural history cited by TwinStrand (D.I. 586 at 10 n.2) does not impact that holding. If anything, the

Despite this clear guidance, TwinStrand argues that the Exact License should be disregarded because the hypothetical negotiation for ongoing royalties occurs "immediately after the date of judgment" and the Exact License was executed in July 2024, not February.[3]  D.I. 586 at 9. But *Arctic Cat* (which TwinStrand cites for this argument) instead simply confirms that the hypothetical negotiation for ongoing royalties occurs "once a judgment of validity and infringement has been entered," or "post-judgment." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017).  Through its decisions in *Paice*, *XY*, and *Arctic Cat*, the Federal Circuit endorses a post-judgment hypothetical negotiation date for ongoing royalties, based on post-judgment evidence such as the Exact License.

TwinStrand's argument that post-trial licenses could never be relevant because it would "undermine the judicial systems' interest in finality" (D.I. 586 at 7-8) is inconsistent with the Federal Circuit cases discussed above that recognize the relevance of post-verdict evidence to ongoing royalties.

Even with respect to past damages, it is not illogical to seek to introduce a later-arising comparable license to demonstrate that the jury's verdict should not stand or that the Court should grant a new trial. The fact that TwinStrand agreed to a ██████████ with Exact just months after Guardant's expert testified that ██████████ would be appropriate, is surely relevant to whether the evidence provided to the jury can support a verdict with a royalty rate ██████████

---

Federal Circuit's admonition to the district court that more discovery and more analysis related to an ongoing royalty was necessary supports Guardant's position.

[3] The judgment that was entered, by its own terms, is "subject to modification following the Court's consideration of the parties' post-trial motions" (D.I. 520) and thus contemplates entry of a modified or amended judgment. Moreover, none of the cases cited by TwinStrand in its opposition exclude consideration of a license of the patents-in-suit executed soon after the entry of judgment, weeks after post-trial briefing ended, and before the Court has ruled on any of the parties' post-trial motions (as is the case here).

██████████ D.I. 583 at 6. TwinStrand suggests that the negotiations for the Exact License were "likely informed by" the verdict against Guardant and its 6% royalty rate for past damages. D.I. 586 at 7. Far from rendering the Exact License irrelevant, that context may bolster its relevance by providing an example of parties negotiating in a world where the patents have been found valid and infringed, as dictated by the hypothetical negotiation rules.[4]

Cases cited by Guardant in its motion, including *I-MAB* and *ActiveVideo*, hold that evidence arising after the hypothetical negotiation date may be relevant, and therefore important to issues pending before the Court including past damages. TwinStrand does not challenge those holdings, and instead claims these cases do not discuss "reopening the [trial] record," but they were not cited for that proposition. D.I. 586 at 6-7. The *Apple* case cited by Guardant bears directly on the discoverability and relevance of a post-verdict settlement vis-à-vis post-trial briefing; there the district court permitted discovery on a post-verdict license agreement precisely because it was relevant to post-trial issues, just like this case. D.I. 586 at 7.

TwinStrand suggests that post-hypothetical negotiation evidence can be used ***only*** to demonstrate the parties' state of mind at the hypothetical negotiation, citing *I-Mab*. But *I-Mab* holds no such thing, and simply permits the use of post-hypothetical negotiation evidence to show an earlier state of mind of one of the parties to the negotiation. Similarly, here, the Exact License would (among other things) demonstrate TwinStrand's state of mind at the 2021 hypothetical negotiation for past damages and the 2024 hypothetical negotiation for ongoing royalties. Again, however, questions of how specifically the Exact License impacts damages should be resolved through supplemental briefing, not this motion.

---

[4] Moreover, it suggests that the royalty rate in the Exact License would have been ***even lower*** than ████ if not for the verdict against Guardant.

**B.      The Court Should Permit Supplemental Post-Trial Briefing**

Guardant is requesting leave to submit a short supplement to the post-trial briefing, not to reopen the trial record. Guardant's request would require modification of the Court's "Supplemental Scheduling Order" for post-trial briefing (D.I. 501) and therefore Guardant applied the good cause standard.  The Court's ability to enter scheduling orders does not end with trial, nor does TwinStrand cite any authority that the pre- and post-trial standards for modifying a scheduling order differ. Rule 16 requires that the Court indicate deadlines by which the parties "file motions," and permits the inclusion of "other appropriate matters."  Fed. R. Civ. P. 16(b)(3). Guardant seeks to modify the Supplemental Scheduling Order, pursuant to Fed. R. Civ. P. 16 or the Court's inherent authority, to permit a supplemental brief. The *Starwood* case cited by TwinStrand simply applies the good cause standard—it does not discuss the modification of a scheduling order entered after trial. *See Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, C.A. No. 18-654-RGA, 2019 WL 4740083 (D. Del. Sept. 27, 2019). Guardant maintains that the appropriate standard here is good cause.

TwinStrand asserts that a different framework applies, related to reopening or supplementing the trial record. Even if that standard applied, it would concern only past damages. As TwinStrand acknowledges, the relevant date of the hypothetical negotiation for ongoing royalties is after the jury verdict. D.I. 586 at 9 (citing *Arctic Cat*). Thus, there is no need to reopen the trial record to consider the Exact License on the issue of a running royalty. *See Paice,* 504 F.3d at 1314-15 (district court may take "additional evidence" after trial "to account for any additional economic factors arising out of the imposition of an ongoing royalty.").

Solely on the issue of ***past*** damages, even if the issue is framed as reopening the trial record, Guardant should prevail. This case involves evidence that came into existence after trial,

independent of Guardant's actions. This is not like the situation in *Corcept*, where the patentee sought to introduce self-serving hearsay declarations based on information that was available during trial. *Corcept Therapeutics, Inc. v. Teva Pharms. USA, Inc.*, 709 F. Supp. 3d 138, 156 n.6 (D.N.J. 2023). And in the *Chemed* case cited by TwinStrand, this Court **permitted** reopening of the record where the evidence in question was important and there was no undue prejudice because the delay associated with supplementation was not great. *In re Chemed Corp., S'holder Derivative Litig.*, No. CV 13-1854-LPS-CJB, 2017 WL 1712530, at *8 (D. Del. Apr. 25, 2017)). Under the three-factor *Chemed* test, supplementation is warranted—(1) Guardant acted diligently and quickly upon learning of the Exact License;[5] (2) the Exact License is important and relevant; and (3) TwinStrand is not prejudiced (let alone unduly prejudiced) by supplemental briefing on its own license agreement.

Each of the factors identified by TwinStrand favors permitting the parties to address the Exact License through supplemental briefing. <u>First</u>, with regard to the timing of the request, Guardant could not have raised this issue earlier because the Exact License was not executed until ███████ and Guardant did not learn of it until public information became available ████ ███████. D.I. 583 at 3.  Guardant diligently sought the Exact License and just days after TwinStrand produced the unredacted license (nearly three months after Guardant had first asked for it), Guardant raised this request with the Court. *Id.* at 3-5.

<u>Second</u>, regarding the importance of the information, both parties apparently agree that the Exact License has relevance to issues pending before the Court, including the imposition and amount of an ongoing royalty (should the Court permit the liability verdict to stand). For example, TwinStrand argues that the "implied royalty rate" for the Exact License "would likely be far higher

---

[5] Guardant's case is even stronger than in *Chemed*, where the movant delayed.

than the 6% figure the jury awarded." D.I. 586 at 9-10. While Guardant disagrees, that is an issue that should be resolved through supplemental briefing, taking into account the testimony of damages experts, not the conclusory assertions of TwinStrand's attorneys. Similarly, TwinStrand's argument that the Exact License is "very different in structure from the licenses in evidence at trial" (*id.* at 2) is about comparability and cannot be resolved based on attorney argument alone. Additionally, TwinStrand's assertion that supplemental briefing would require additional discovery is an acknowledgment of relevance—if the Exact License is facially irrelevant, as TwinStrand asserts, no additional discovery would be necessary.

The *Texaco* decision cited by TwinStrand involved evidence that could have been introduced at trial, which is not the case here. *Nat. Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 504 (3d Cir. 1993). Despite that fact, the Third Circuit affirmed the district court's decision to **permit** supplementation. *Id.* The *Corcept* case (discussed above) also involved evidence that could have been introduced during trial. 709 F. Supp. 3d at 156 n.6. Guardant disputes that the jury had sufficient evidence to award damages, as set forth in its post-trial briefs, and the Exact License supports Guardant's position. D.I. 531 at 16-20.

Third, regarding undue prejudice, there is none. There is no trial date, no deadline for resolving the parties' post-trial motions, and no request for injunction. D.I. 583 at 6. TwinStrand asserts that supplemental post-trial briefing would delay TwinStrand's relief, but there is no evidence of that. The damages award is secured by a bond, and will continue to be so secured during any appeal. Moreover, TwinStrand has already effectively reopened the record by producing the Exact License weeks ago. D.I. 586 at 3. If anything, preventing Guardant from addressing a comparable exclusive license with ███████████████ than the jury awarded would be prejudicial to Guardant. Thus, supplemental briefing will not prejudice TwinStrand.

## CONCLUSION

For the reasons set forth above and in its motion, Guardant respectfully requests leave to submit a supplemental post-trial brief and a limited expert declaration on the issue of the impact of the Exact License on the parties' post-trial issues, including ongoing royalties and damages.

Dated: November 21, 2024

Respectfully submitted,

**DLA PIPER LLP (US)**

**Of Counsel**:

/s/ Jeff Castellano
Brian A. Biggs (DE Bar No. 5591)
Jeff Castellano (DE Bar No. 4837)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
jeff.castellano@us.dlapiper.com
erin.larson@us.dlapiper.com

*Attorneys for Defendant Guardant Health, Inc.*

Mark Fowler (admitted P*ro hac vice)*
Susan Krumplitsch (admitted P*ro hac vice)*
**DLA PIPER LLP (US)**
3203 Hanover St Suite 100
Palo Alto, California 94304
Telephone: 650-833-2048
Facsimile: 650-687-1138
mark.fowler@us.dlapiper.com
susan.krumplitsch@us.dlapiper.com
monica.delazzari@us.dlapiper.com

Ellen Scordino (admitted P*ro Hac Vice)*
Nancy C. Braman (admitted *Pro Hac Vice)*
**DLA PIPER LLP (US)**
33 Arch Street
26th Floor
Boston, MA 02110-1447
Telephone: 617-406-6085
ellen.scordino@us.dlapiper.com
nancy.braman@us.dlapiper.com